WILLIAM H. WARNER ET AL. V. ERNEST FEIGE.

*Sale of lumber—Verbal contract.*

On a review of the testimony in this case,—

　　*Held*, that if the minds of the parties did not meet on any *material* question, the verbal contract for the sale of lumber by plaintiffs to defendant could not be treated as complete, and,

while all lumber received must be paid for, lumber not received need not be if not actually purchased.

*Held,* further, that the case illustrates the importance of the statute of frauds in requiring parties to make and sign written agreements, and, if they see fit to act outside of the statute, it is necessary that everything should be shown to have been completed with a mutual agreement on the whole matter.

Error to Saginaw. (Gage, J.) Argued February 2, 1887. Decided February 10, 1887.

Assumpsit. Defendant brings error. Reversed The facts are stated in the opinion.

*H. H. Hoyt,* for appellant.

*Edget & Brooks,* for plaintiffs.

CAMPBELL, C. J. Plaintiffs sued defendant for a balance remaining due on an alleged sale of hardwood lumber. The plaintiffs' claim is that in December, 1883, they had several piles on their dock of ash and maple, which had not been measured, and that a verbal agreement was made whereby it was all sold to defendant at $12 a thousand, to remain until carried away by defendant, either within a period named, or in a reasonable time, there being a conflict on this point. An estimate was agreed on at 150,000 feet, and a note was given on that basis. At the same time a bill was rendered, and the note credited as payment. Subjoined was this memorandum on the debit side of the account :

"The above lumber is charged on estimate, and is to be measured when delivered, and the balance, if any, paid for."

In the plaintiffs' private sales-book is a memorandum of the same purport, but with the addition that the lumber was to be at defendant's risk. There is a direct contradiction as to whether defendant knew of the form of this entry. As there was no written contract, and as a sale and delivery had to be made out by positive proof in order to bind defendant,

we do not feel satisfied that this item of testimony should have been received. The bill of sale itself, taken alone, would indicate that it referred to a completed sale just as distinctly as this entry did, but neither amounted to a contract alone; and, in order to bind defendant by these terms as referred to by a valid verbal contract, we think the bill furnished is the one that should govern, instead of the *ex parte* memorandum retained. But it does not appear to be very material, in any view of the case authorized by the testimony. Neither of these papers identifies any particular lumber. It was understood on both sides that the parties were bargaining for such lumber as was examined by defendant; and as to that lumber, in the absence of any explanation, the defendant's testimony, as well as plaintiffs', points to an absolute sale, and the charge as to what would make such a sale was correct, so far as it went. The difficulty, if there is any, relates to an entirely different matter.

Defendant never removed more than a little over 131,000 feet. He paid his note in full, but refused to accept over 150,000 feet, while plaintiffs refused to recognize any sale less than the whole amount they claimed to have been on the dock, and this they insist was about 180,000 feet.

There was on the trial a dispute concerning the number of piles counted in the purchase. There was some testimony, also, that additional green lumber had been put on the piles of seasoned lumber, and that some of this was drawn and used by defendant, who, when informed, objected to it, and took no more of it.

The defendant also swore that the highest estimate made was 150,000 feet, and that he estimated the lumber at less.

The court told the jury that they need not consider the green lumber, as defendant had used it, and the amount was indefinite. He also told the jury not to consider the question in regard to defendant's claim that he bought only 150,000, as, in the light of his cross-examination, that should not be

submitted; and the only questions he did submit were the absolute character of the sale, and the amount of lumber on the dock, and the amount removed.

In order to make a valid and complete sale, the parties must have had their minds meet on all that was essential. The testimony on both sides shows that defendant refused to give his note for more than 150,000 feet, and he swears he thought that an excessive estimate. Both *memoranda* contain this same estimate. The plaintiffs' testimony shows no estimate that would reach the amount now claimed. It is not open to doubt that defendant did not consider he was buying more than about 150,000. The difference is a very large amount,—much too great to be regarded as unimportant, —and it was, we think, material, as bearing upon the question whether there was not a serious mistake as to the quantity covered by the contract that might bear directly on the mutual understanding. Defendant denies that he examined all the piles, and, if he did not, there was no bargain that covered them. This estimate was of some significance on that question. So, also, we think was the question whether, after the purchase, some of these piles were not changed by adding other lumber. Any intentional addition to piles supposed to be sold, whether green or dry, would have been a fraud. Any addition, if not fraudulent, would have some tendency to show that the piles changed were not supposed to be sold, and the use of the green lumber would not change this fact.

If the minds of the parties did not meet on any material question, this verbal contract could not be treated as complete, and, while all lumber received must be paid for, lumber not received need not be if not actually purchased.

This case illustrates the importance of the statute of frauds in requiring the parties to make and sign written agreements. Nothing here was completely fixed by writing, and nothing was identified. Where parties see fit to act outside of the

statute, it is necessary that everything should be shown to have been completed with a mutual agreement on the whole matter.　We think the court shut out two material considerations, which bore on more than one phase of the controversy.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.